UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MELODY WILLIAMS, | ) | CASE NO. 3:14CV2472 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| JEFF LISATH, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | OF MAGISTRATE JUDGE |
| | ) | |

On November 7, 2014, Petitioner Melody Williams ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner filed an amended petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 29, 2015, incorporating the arguments made in her original petition.  ECF Dkt. #14.  Respondent Jeff Lisath ("Respondent") filed a answer/return of writ on September 30, 2015.  ECF Dkt. #31.[1] Petitioner filed a traverse to Respondent's answer/return of writ on December 4, 2015.  ECF Dkt. #42.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's petition for a writ of habeas corpus, as originally filed and as amended (ECF Dkt. #1, #14), in its entirety with prejudice.

**I.      SYNOPSIS OF THE FACTS**

The Sixth District Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct" and Petitioner has "the burden of rebutting the presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).  As set forth by the Sixth District Court of Appeals, the facts are:

{¶ 2} At 5:25 a.m. on July 4, 2011, Sylvania Township firefighters responded to

---

[1]The party named on the docket is Jeff Lisath, however, both parties recognize that Petitioner is bringing suit against the Warden of Dayton Correctional Institution.

an automated alarm from a residence on Inland Drive in the township. When the firefighters arrived, they found the brick ranch house locked. After cutting through a security gate, they broke down the front door. On entering, they went left toward a room fully involved in fire. The smoke was so thick they had to feel their way. In the process, they came upon a bed and felt a body.

{¶ 3} Firefighters carried the nude male outside the house and returned to extinguish multiple fires inside. Arson was thought to be the almost certain cause of the fires.

{¶ 4} The man carried from the house was its owner, L.C. Lyons. He was dead; not from the fire, but from a small caliber bullet in his head.

{¶ 5} Police began to interview Lyons' associates, beginning with a longtime former girlfriend who appeared at the scene as the investigation was beginning. The ex-girlfriend told police that Lyons never slept in the nude unless he was engaging in sexual activity. Investigators also learned that Lyons was a successful drug dealer who moved from the center city to the suburbs for security purposes. Police later found 144 grams of crack cocaine in a locked room in the house. A loaded handgun was found in a bedside table. Fire investigators also found two unignited green tipped "Diamond" brand matches.

{¶ 6} Missing from the house were any large sums of money and the jewelry Lyons was fond of. Notable among his collection was a custom made lion-head pendant on a chain. Also, missing from the garage was the 2011 Nissan Altima Lyons normally drove.

{¶ 7} The Nissan was found three days later in central Toledo. The right floorboard of the car showed signs of burning. An empty container of "Our Family" brand charcoal lighter fluid and a box of green tipped "Diamond" brand matches were found inside. A fire investigator later testified that the fire on the floorboard would have consumed the interior of the car and its contents had the windows not been closed. As it was, the fire burned itself out when it used up the oxygen in the compartment.

{¶ 8} Investigators obtained the victim's telephone records. They noted a series of calls on the evening of July 3 from appellant, Melody Williams, including a text message from appellant to the victim asking that he pick her up at 10:30 that night.

{¶ 9} On July 6, a lion-head pendant matching the description of the one missing from the victim's home was sold at a Detroit, Michigan pawnshop. A fingerprint from the pawnshop records revealed that the seller of the pendant was appellant's ex-husband, Alfred Williams. The jeweler who designed the pendant later identified it as the one he custom made for L.C. Lyons.

{¶ 10} Police obtained telephone records and, in some instances, text messages from appellant's cell phone and those of several others. For July 6, they tracked Alfred Williams' journey from Toledo to the pawnshop in Detroit cell tower by cell tower. During most of the trip he was talking to a cell phone ordinarily used by appellant.

{¶ 11} Text messages between appellant and her niece on the day before the murder suggested that appellant was in dire need of money and would be willing to engage in prostitution to obtain funds. A text from appellant to her ex-husband the next day indicated that she now had funds, but needed his help with a matter

she could not discuss on the telephone.

{¶ 12} Investigators contacted the distributor of "Our Family" charcoal lighter fluid and were informed that, in Toledo, the brand was sold only at a supermarket in the central city. On the shelf at that store, detectives saw the product in a display next to green tipped "Diamond" brand matches. The matches were sold in packages of eight. When police executed a search warrant of appellant's house and car, they found six packages of green tipped matches in the house and one in the car. Each box of matches was stamped with the same lot number of the one found in the victim's Nissan.

{¶ 13} Finally, a witness came forward. Appellant's cousin, Justin Westley, told police that in the early morning hours of July 4 appellant called him for help. According to Westley, appellant picked him up in a gray Nissan. She had a bag containing a ring, a watch, a bracelet and a lion-head pendant. She also had some cocaine.

{¶ 14} Westley told police that appellant asked him to sell the jewelry, except for the pendant. According to Westley, he accompanied appellant to the victim's house where she entered through the garage and was inside for approximately 15 minutes. When she returned to the car, she was moving rapidly and smelled of charcoal lighter fluid, Westley reported.

{¶ 15} Westley later testified that the two then drove to a spot at the mouth of the Maumee River, recommended by Westley, where they disposed of a small caliber automatic handgun. Returning to the central city, Westley reported he saw appellant spray charcoal lighter into the car. Westley claimed not to have actually seen the ignition of the fluid in the car.

{¶ 16} On October 11, 2012, appellant was named in a two count indictment charging her with aggravated murder and aggravated robbery, both with a firearm specification. A subsequent second indictment added a count of aggravated arson and two counts of tampering with evidence. Appellant pled not guilty on the original indictment and counsel was appointed.

{¶ 17} At the arraignment on the second indictment, appointed counsel moved to withdraw and appellant informed the court that she wished to proceed pro se. The court granted appointed counsel's motion to withdraw and appointed an experienced trial lawyer for the limited purpose of discussing with appellant the ramifications of self-representation. At a subsequent pretrial/arraignment, appellant reiterated her desire to represent herself and pled not guilty to the counts contained in the second indictment.

{¶ 18} The court held a hearing on appellant's self-representation, concluding that she was competent to represent herself. The court advised appellant of the dangers of self-representation; warnings the court repeated at nearly every subsequent proceeding.

{¶ 19} On March 4, 2013, the charges in both indictments were tried together to a jury. Appellant represented herself, with court-appointed standby counsel present. On March 8, 2013, the jury found appellant guilty of all counts and specifications. The trial court accepted the verdict and sentenced appellant to a term of life imprisonment with parole possibility after 30 years for the aggravated murder, 10 years for the aggravated robbery, a mandatory three years for the merged firearm specifications, 10 years for aggravated arson and terms of three years each on the

two tampering charges. All sentences were ordered served consecutively.

{¶ 20} Appellant's post-verdict motion for a mistrial, construed as a motion for a new trial, was denied.

*State v. Williams,* 6th Dist. Lucas Nos. L-13-1053, L-13-1054, 2014-Ohio-2834.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On October 11, 2012, Petitioner was indicted by a Lucas County Grand Jury, in two indictments, on one count of aggravated murder under R.C. § 2903.01(B) and (F) with a firearm specification, one count of aggravated robbery under R.C. § 2911.01(A)(3) with a firearm specification, one count of aggravated arson under R.C. § 2909.02(A)(1) and (B)(2), and two counts of tampering with evidence under R.C. § 2921.11(A)(1) and (B).  ECF Dkt. #31-1 at 6-11.  Petitioner was tried in the Lucas County Common Pleas Court.  *Id.* at 68.  Petitioner was initially appointed counsel by the trial court.  *Id.* at 12.  On December 18, 2012, Petitioner waived her right to counsel and elected to represent herself.  *Id.* at 15-21.  The trial court advised Petitioner of the nature of the charges, the range of available punishments, possible defenses, if any, and all other matters relevant to the right to trial counsel, and determined that Plaintiff had made a knowing, intelligent, and voluntary waiver of her right to counsel.  *Id.* at 22-23.  Additionally, Petitioner was appointed advisory counsel and her cases were consolidated for trial.  *Id.*

On December 13, 2012, Petitioner's appointed counsel filed a motion for specific discovery requesting all information relative to the activities of Justin Westley as those activities related to his cooperation with law enforcement agencies and agents in Petitioner's case.  ECF Dkt. #31-1 at 27.  Petitioner, acting *pro se*, filed a similar motion for specific discovery on December 31, 2012.  *Id.* at 30.  Petitioner also filed a motion for specific discovery regarding the grand jury indictments on December 31, 2012.  *Id.* at 33.  After filing the motions for specific discovery, Petitioner withdrew her motion for specific discovery relative to the activities of Justin Westley, and the trial court denied Petitioner's motion for specific discovery relative to the grand jury indictments as moot.  *Id.* at 38.

-4-

On January 2, 2013, Petitioner filed a motion requesting "tools and resources required to adequately and effectively self represent."  ECF Dkt. #31-1 at 40.  Petitioner filed a motion to suppress evidence on January 4, 2013 related to a green spiral notebook that was obtained during the execution of a search warrant by Sylvania Township police officers.  *Id.* at 49.  On January 15, 2013, Petitioner filed a motion to suppress wiretap evidence.  ECF Dkt. #31-1 at 56.  The trial court granted Petitioner's motion for tools and resources to the extent that the applicable policies and procedures required, and denied Petitioner's motions to suppress evidence.  ECF Dkt. #31-1 at 38, 67.

On March 8, 2013, Petitioner was found guilty of aggravated murder with a firearm specification, aggravated robbery with a firearm specification, aggravated arson, and two tampering with the evidence charges.  ECF #31-1 at 68.  Petitioner was sentenced to a term of life with parole eligibility after serving thirty years on the aggravated murder charge, with an additional term of three years for the firearm specification.  *Id.* at 71.  As to the aggravated robbery charge, Petitioner was sentenced to ten years, with an additional term of three years for the firearm specification.  *Id.*  The firearm specifications for the aggravated murder and the aggravated robbery charges were merged into a single mandatory and consecutive prison term of three years.  *Id.*  Petitioner was sentenced to ten years in prison for the aggravated arson charge and three years for both of the tampering with evidence charges.  *Id.* at 75.  The sentences posed for aggravated murder, aggravated robbery,  firearm specifications, aggravated arson, and both tampering with evidence convictions were to be served consecutively.  *Id.* at 71, 75.

On March 11, 2013, Petitioner filed a motion for a mistrial, which the trial court determined was a motion for a new trial.  ECF Dkt. #31-1 at 78.  The trial court denied Petitioner's motion for a new trial on March 21, 2013.  *Id.* At 102.  Petitioner filed a second motion for a mistrial on March 25, 2013.  *Id.* at 104.  The trial court determined that Petitioner had actually filed a second motion for a new trial, and denied the second motion for a new trial on April 3, 2013.  *Id.* at 118.  Petitioner filed an additional motion for a new trial based on newly discovered evidence on July 16, 2013 while Petitioner's direct appeal was pending.  *Id.* at 355.  This motion was also denied after the trial court determined that Petitioner had failed "to

demonstrate a strong possibility that the results of the trial would have been different with the additional 'evidence.'" *Id.* at 374.

### B.  Appeals to State Intermediate Court and Supreme Court of Ohio

Petitioner, through counsel, filed a notice of appeal on March 29, 2013.  ECF Dkt. #31-1 at 120.  Petitioner, acting *pro se*, then filed a motion to dismiss her appeal and discharge her appellate counsel.  *Id.* at 122.  Petitioner's motion to dismiss was stricken from the record because Petitioner had no right to file *pro se* since she was represented by counsel, and the appellate court would not entertain a "hybrid" form of representation.  *Id.* at 125.  Petitioner's appellate counsel then raised the following assignments of error:

1.  The trial court failed to protect the rights of the accused concerning her representation as a *pro se* defendant in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

   a.  The waiver of counsel was not a knowing, voluntary and intelligent waiver as the Court failed to adequately determined the competency of the [Petitioner].

   b.  The waiver of counsel was not a knowing, voluntary and intelligent waiver as the Court made insufficient examination of the [Petitioner] concerning her rights and duties as a *pro se* litigant.

   c.  The trial court failed to adequately provide for the [Petitioner] to properly represent herself at the time of trial.

2.  The [Petitioner's] convictions were not supported by a sufficiency of evidence.

3.  The [Petitioner's] convictions are against the manifest weight of the evidence.

4.  The trial court erred in failing to grant [Petitioner's] Rule 29 motion to dismiss at the time of trial.

5.  Comments made by the prosecuting attorney in his closing argument amounted to prosecutorial misconduct and violated the [Petitioner's] Fifth Amendment rights as guaranteed by the United States Constitution.

6.  The trial court erred in failing to grant the motion for new trial (mistrial) that was filed post-trial by the [Petitioner].

7.  The cumulative effect of the errors committed by the trial court violated the [Petitioner's] right to a fair trial and her constitutional rights to due process, the right to confront evidence and the right to be free from arbitrary, cruel and unusual punishment in contradiction to the U.S. Constitution, Amendments V, VI, VII, IX and XIV and the privileges

-6-

granted in the Ohio Constitution.

8.   The trial court erred in imposing maximum sentences and consecutive sentences in violation of the Eighth Amendment to the United States Constitution and the guidelines under the Ohio Revised Code.

a.   The imposition of maximum terms was unwarranted.

b.   The imposition of consecutive sentences was unwarranted.

*Id.* at 127.  Petitioner filed a motion for appointment of new counsel on May 20, 2014.  *Id.* at 257.  This motion was stricken from the record on June 3, 2014, and the appellate court again stated that Petitioner had no right to a hybrid form of representation.  *Id.* at 279.  On June 27, 2014, the appellate court affirmed the trial court's decision.  *Id.* at 281.

Petitioner filed a notice of appeal in the Supreme Court of Ohio on August 11, 2014. ECF Dkt. #31-1 at 306.  The State waived its response.  *Id.* at 353.  The Supreme Court of Ohio declined jurisdiction on November 19, 2014.  *Id.* at 354.

### C.   Collateral Civil Actions

On January 3, 2014, Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Ohio.  ECF Dkt. #31-2 at 6.  Petitioner filed a second petition for a writ of habeas corpus on January 6, 2014.  *Id.* at 64.  The Supreme Court of Ohio dismissed both of Petitioner's habeas petitions *sua sponte*.  *Id.* at 63, 191.  On January 6, 2014, Petitioner filed a petition for a writ of mandamus.  *Id.* At 192.  The State filed a motion to dismiss on January 29, 2014, and that motion was granted by the Supreme Court of Ohio on March 12, 2014.  ECF Dkt. #31-3 at 6, 13.  Petitioner filed a third petition and a fourth petition for a writ of habeas corpus in the Supreme Court of Ohio on June 2, 2014, and June 18, 2014, respectfully.  *Id.* at 14, 36. Petitioner filed a motion to dismiss her third state habeas petition on September 19, 2014 in order to properly file the instant federal habeas petition.  *Id.* at 33.  The Supreme Court of Ohio granted Petitioner's motion to withdraw her third habeas petition on September 23, 2014, and dismissed Petitioner's fourth state habeas petition *sua sponte* on September 24, 2014.  *Id.* at 35, 125.

### III.   28 U.S.C. § 2254 PETITION

On November 7, 2014, Petitioner filed the instant petition for a writ of federal habeas

corpus.  ECF Dkt. #1.  Petitioner filed an amended habeas petition on June 29, 2015.  ECF Dkt. #14.  Petitioner's amended habeas petition incorporates her original habeas petition and appears to be supplementary to the original habeas petition.  Respondent filed a return of writ on September 30, 2015.  ECF Dkt. #31.  On November 30, 2015, Petitioner filed a traverse to Respondent's return of writ.  ECF Dkt. #39.  Petitioner filed an amended traverse to Respondent's return of writ on December 4, 2015.[2]  ECF Dkt. #42.

In her habeas petition, Petitioner only properly raised one ground for relief, namely, "ineffective assistance of appellate counsel pending OSC."  ECF Dkt. #1 at 5.  In the spaces allocated for Petitioner to state further grounds for relief, Petitioner indicates that the Court should "See attached Petition."  *Id.* at 7-8, 10.  Petitioner's amended habeas petition did nothing to remedy these defects.  Even after Respondent's return of writ noted the deficiency of Petitioner's habeas petition and amended habeas petition, Petitioner did nothing to remedy her defective habeas petitions in her traverse or amended traverse, instead asserting arguments under headings consisting of: appellate court review; ineffective assistance of appellate counsel; prosecutor misconduct; sentencing; clerk of court/Lucas county common pleas; self representation; specific tools and resources; jury misconduct; confrontation clause; and jury misconduct and bias.  ECF Dkt. #39, #42.  Under the headings in her traverse, Petitioner argues the merits of each as a standalone violation of her rights, rather than in the context of ineffective assistance of counsel and appears to now ask the Court to consider each of these arguments when deciding her ineffective assistance of counsel claim and as a standalone ground for relief.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S.

---

[2]Petitioner's amended traverse is a completed version of her original traverse and is referred to simply as Petitioner's "traverse."

725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the

options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.

*Coleman*, 501 U.S. at 735.

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d at 313-14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the

issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

>          Simply stated, a federal court may review federal claims:

> > that were evaluated on the merits by a state court. Claims that were
> > not so evaluated, either because they were never presented to the
> > state courts (i.e., exhausted) or because they were not properly
> > presented to the state courts (i.e., were procedurally defaulted), are
> > generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

## <u>V</u>.       <u>STANDARD OF REVIEW</u>

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion,

and procedural default, the AEDPA governs this Court's review of the instant case because

Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after

the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.

1997), *cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if

he is held in custody in violation of the United States Constitution or laws or treaties of the

United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of

habeas corpus.  The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a
>         person in custody pursuant to the judgment of a State court
>         shall not be granted with respect to any claim that was
>         adjudicated on the merits in State court proceedings unless
>         the adjudication of the claim –

> > (1)     resulted in a decision that was *contrary to*, or
> >         involved an *unreasonable application of*, clearly
> >         established Federal law, as determined by the
> >         Supreme Court of the United States; or

> > (2)     resulted in a decision that was based on an
> >         unreasonable determination of the facts in light of
> >         the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254 and stated:

> > Under the "contrary to" clause, a federal habeas court may grant the
> > writ if the state court arrives at a conclusion opposite to that reached

-12-

> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's
> decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

   A.   Decisions of lower federal courts may not be considered.

   B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

   C.   The state court decision may be overturned only if:

        1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new

> context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should
> apply.'
>
> D.  Throughout this analysis the federal court may not merely apply its
> own views of what the law should be. Rather, to be overturned, a
> state court's application of Supreme Court of the United States
> precedent must also be objectively unreasonable.  That is to say,
> that 'a federal habeas court may not issue the writ simply because
> that court concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law
> erroneously or incorrectly.'  'An unreasonable application of
> federal law is different from an incorrect or erroneous application
> of federal law.'
>
> E.  Findings of fact of the state courts are presumed to be correct. 'The
> applicant shall have the burden of rebutting the presumption of
> correctness by clear and convincing evidence.'

*Bailey,* 271 F.3d at 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court, a
> determination of a factual issue made by a State court shall be presumed to
> be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

## VI.    ANALYSIS

Petitioner has filed both a habeas petition and an amended habeas petition. ECF Dkt. #1, #14. In the amended habeas petition, Petitioner fully incorporates her original habeas petition. ECF Dkt. #14 at 2. In fact, it appears that the amended habeas petition is supplementary due to the fact that the amended habeas petition makes fewer allegations and only briefly expands on the arguments made in the original habeas petition, despite the length of the amended habeas petition. As such, the undersigned will address the original habeas petition, followed by any additional arguments presented in the amended habeas petition.

### A.    Rules Governing Section 2254 and 2255 Cases

Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases indicates that a habeas petition must:

(1) specify all grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

(5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Respondent asserts that Petitioner's habeas petition does not comply with Rule 2(c) in regards to any purported claim other than a Sixth Amendment ineffective assistance of appellate counsel claim. ECF Dkt. #31 at 23. Dismissal under Rule 2(c) is appropriate in cases where a habeas petition and accompanying documents, as well as the additional pleadings and notices, contain "so many unintelligible and conclusory allegations and statements" that it is impossible for the court to determine the exact errors of fact or law" that have been raised for adjudication. *Rice v. Warden,* No. 1:14-cv-732, 2015 WL 5299421 (S.D. Ohio Sept. 9, 2015) (quoting *Tinsley v.*

*Beasley,* No. 5:11-CV-113289, 2011 WL 3497306 (E.D. Mich. Aug. 10, 2011)) (internal citation omitted). Additionally, conclusory allegations with no accompanying evidentiary support are insufficient to warrant habeas relief, and "[a] petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law or it may summarily be dismissed." *Creech v. Taylor,* No. 13-165-HRW, 2013 WL 6044359, *2 (E.D. Ky. Nov. 14, 2013) (citing *Malcolm v. Burt.*, 276 F.Supp.2d 664, 685 (E.D. Mich. 2003); *Edwards v. Johns*, 450 F.Supp.2d 755, 756 (E.D. Mich. 2006)). Respondent does not allege that Petitioner's ineffective assistance of counsel claim should be dismissed based on Rule 2(c), and concedes that this claim must be addressed. Accordingly, the following discussion of Rule 2(c) does not pertain to Petitioner's ineffective assistance of appellate counsel claim.

Petitioner's habeas petition and the related pleadings are not unintelligible. In numerous cases where the court has determined a petitioner's habeas petition to be unintelligible, the court has been unable to understand the contents of the petition, or was unable to read the petition due to illegible handwriting. *Jackson v. Albany Bureau Unit*, 442 F.3d 51 (2nd Cir. 2006) (affirming dismissal of an amended petition under Rule 2(c) found to be unintelligible); *Bakalov v.Utah*, 4 Fed. App'x 654 (10th Cir. 2001) (affirming dismissal of a habeas petition that failed to inform the district court whether relief was available, failed to allow respondent to file a meaningful response, and contained so many unintelligible and conclusory allegations and statements that it was impossible to ascertain the exact errors of fact and law raised); *Edwards v. Johns,* 450 F.Supp.2d 755 (E.D. Mich. 2006) (dismissing a habeas petition that was illegible and unintelligible); *Dunlap v. Superior Court of Cty. of San Benardino*, No. 1:15-cv-00837, 2015 WL 3542827 (D. D. C. June 5, 2015) (dismissing a habeas petition comprised on incoherent statements).

Petitioner's habeas petition and amended habeas petition are both legible, and Petitioner presents reasonably clear claims and arguments. Petitioner specified her alleged grounds for relief and set forth her summary of the facts, as is required for compliance with Rule 2(c). *See Flood v. Phillips*, 90 Fed. App'x 108, 113-14 (6th Cir. 2004). Accordingly, Petitioner's habeas

-16-

petition and amended habeas petition are not unintelligible.  However, Petitioner's habeas petition and amended habeas petition contain a great number of conclusory allegations and statements that are not supported by any cited evidence.

The argument portion of Petitioner's habeas petition begins by alleging that her appellate counsel was ineffective, and claims of the ineffectiveness of appellate counsel are continuously mentioned  throughout the petition.  ECF Dkt. #1-1 at 8-17.  As mentioned above, Petitioner's ineffective assistance of counsel claim will be addressed below.  Following the brief discussion of Petitioner's argument regarding the ineffective assistance of appellate counsel, Petitioner begins detailing how the Lucas County Common Pleas Court, the Lucas County Democratic Party, members of the Supreme Court of Ohio, and members of the jury engaged in a conspiracy to convict Petitioner.  *Id.* at 8.

Petitioner first alleges that her appellate counsel failed to pursue a vigorous defense because he feared that doing so would uncover that his true allegiance was to the State because he was an ex-assistant prosecutor.  ECF Dkt. #1-1 at 8.  Petitioner does not explain why she believes that her appellate counsel remained loyal to the prosecutor's office to such a degree that he could not represent Petitioner effectively.  Petitioner also claims that her appellate counsel was afraid that vigorous representation would reveal an extrajudicial relationship between various members of the Lucas County Common Pleas Court, elected officials, and members of the jury that convicted Petitioner.  *Id.* at 8-9.  In an attempt to support her allegations, Petitioner claims that Juror #1 had a personal relationship with the prosecuting attorney's wife, and had lied or erred when answering questions during *voir dire* regarding his residence in Oregon, Ohio and criminal history.  *Id.* at 9.  Petitioner fails to mention that the trial court, after Petitioner filed a motion for mistrial, held a hearing during which Juror #1 testified that he never indicated he lived in Oregon, Ohio, had forgotten about a misdemeanor he had been convicted of as a teenager, was simply Facebook friends with the prosecutor's wife, and had no personal relationship with the prosecutor's wife outside of belonging to the same political party and being elected officials. ECF Dkt. #31-1 at 299-300.  The trial court found that the transcript corroborated Juror #1's

-17-

explanations.  *Id.* at 300.

Petitioner then claims that the office of the Lucas County Clerk of Court failed to take seriously Petitioner's right to self-represent, and purposely held her motion for a new trial for five days before filing it so that the motion would be time-barred.  ECF Dkt. #1-1 at 10-11.  It is not clear how Petitioner supports her assertion that the clerk's office did not take her right to self-represent seriously.  It appears that Petitioner claims that the clerk's office did not serve Petitioner with paperwork regarding her case, but rather served her attorney, and that Petitioner believes that the Sixth District Court of Appeals "completely ignored" Petitioner's requests to dismiss.  *Id.* at 10.  Contrary to her claims, the record indicates that the Sixth District Court of Appeals responded to Petitioner's motions and twice informed her that any filings would need to be made through her attorney because Petitioner had no right to file personally and through her attorney.  ECF Dkt. #31-1 at 125-26, 279-80.  Petitioner does not allege that she attempted to have her attorney file any motion to withdraw as counsel.  Further, Petitioner does not cite any evidence indicating that the clerk's office maliciously held her motion for a mistrial, and the record indicates that Petitioner had already mailed one motion for a new trial and the clerk's office had timely filed that motion for a mistrial several days after the jury rendered the verdict.  *Id.* at 78.  Petitioner next claims that the office of the Lucas County Clerk of Court hindered Petitioner's ability to obtain transcripts, however, Petitioner cites no evidence when making this claim.  ECF Dkt. #1-1 at 10.  Rather, Petitioner admits that she was provided with some transcripts, and fails to cite any evidence that the clerk's office did not provide her with the transcripts that were required by law.  *Id.*

Petitioner goes on to make grandiose claims of a conspiracy involving numerous members of the Ohio judiciary, State prosecutors, members of the Lucas County Democratic Party, and jurors.  Without citing any existing evidence, and referring only to the "new evidence," Petitioner claims that an improper extrajudicial relationship existed between Juror #1 and the prosecutor's wife and that "all parties" (presumably meaning all parties involved in Petitioner's jury trial) knew of Juror #1's criminal history and conspired to keep it hidden, and

-18-

had promised Juror #1 their votes prior to Juror #1 being selected as a juror for Petitioner's jury trial. ECF Dkt. #1-1 at 11. Further, Petitioner claims that "new evidence" revealed that Juror #1 had recently paid off a tax lien with which he had been struggling, apparently asserting that Juror #1 had received a bride or cut a deal. *Id.* Petitioner next asserts, in apparent reference to Juror #1, that "[n]ew evidence also reveals the suspension and dismissal of all his past criminal charges," and claims that this indicates that Juror #1 was an informant for the prosecution. *Id.* at 11. Petitioner cites no evidence when making the claims discussed above, but rather relies on her theory that she was the victim of a conspiracy promulgated against her as a result of an "altercation with the State Prosecutor, Julia Bates, two weeks before [Petitioner] was indicted on a year and a half old case." [sic] *Id.* at 12. Petitioner does not further elaborate on the nature of this altercation in her original habeas petition.

Petitioner claims that L.C. Lyons, the individual whose murder resulted in Petitioner's convictions, had an informant relationship with the State prosecutor. ECF Dkt. #1-1 at 12. Petitioner also claims that the State prosecutor had an informant relationship with the sole witness, Justin Westley. Petitioner also alleges that Justin Westley was an informant and was paid for his testimony. *Id.* Petitioner then reasserts that Juror #1, L.C. Lyons, and Justin Westley were all informants for the State. *Id.* Petitioner cites no evidence for her claims beyond her belief that she was the victim of a conspiracy. For the rest of her habeas petition, outside of several discussions regarding ineffective assistance of appellate counsel, Petitioner continues to make claims of conspiracy, implicating the Sixth District Court of Appeals and warning that all the parties acted perfectly in their role to corrupt the judicial process, stating that the alleged deception was "well practiced and fluid, and familiar to each actor as if this is a well-practiced, rehearsed proceeding." *Id.* at 15.

Petitioner's amended habeas petition, which fully incorporated her original habeas petition, asserts substantially similar conclusory allegations of conspiracy as Petitioner's original habeas petition, and did not provide any evidence supporting the allegations. In fact, Petitioner's amended habeas petition appears to be supplementary to Petitioner's original habeas petition.

Further, Petitioner briefly elaborates on the altercation with the State prosecutor, indicating that the altercation occurred when Petitioner attempted to secure damages owed to her from a civil matter. *Id.* at 8. Petitioner's amended habeas petition fails to support her conclusory allegations with any evidence beyond Petitioner's theory and claims of corruption and conspiracy. Finally, Petitioner does not assert any new arguments or a new theory of her case in the amended habeas petition.

As discussed above, Petitioner's habeas petition and amended habeas petition only clearly indicate that Plaintiff is asserting that she is entitled to relief due to ineffective assistance of appellate counsel. Accordingly, this issue will be addressed below. Petitioner's habeas petition and amended habeas petition, insofar as they pertain to all grounds for relief outside of ineffective assistance of appellate counsel, fail to meet the relatively low bar imposed by Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases because Petitioner fails to specify all the grounds for relief available, and, moreover, fails to state facts supporting those grounds for relief.

Accordingly, the undersigned recommends that the Court dismiss Petitioner's habeas petition (ECF Dkt. #1) and amended habeas petition (ECF Dkt. #14), except insofar as the petitions address Petitioner's ineffective assistance of appellate counsel claims.

### B. Exhaustion

#### i. Grounds for Relief Other Than Ineffective Assistance of Appellate Counsel

In addition to violating Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases, all of Petitioner's grounds for relief other that her ineffective assistance of appellate counsel claim have not been exhausted. This includes all of Petitioner's grounds first raised as standalone grounds for relief in her traverse, namely: prosecutorial misconduct; sentencing errors; misconduct by the office of the Lucas County Common Pleas Clerk; errors involving self-representation; requests for specific tools and resources; jury misconduct; confrontation clause violations; and jury misconduct and bias. ECF Dkt. #13-23. Petitioner's only claim that was brought properly for habeas review is her ineffective assistance of appellate counsel claim

because this is the only claim that Petitioner brought before the highest state court.  In her appeal
to the Supreme Court of Ohio, Petitioner asserted a single proposition of law in her memorandum
in support of jurisdiction:

     I.       <u>Ineffective Assistance of Appellate Counsel</u>

          The [Petitioner's] appellate counsel, [sic] purposely omitted submitted probable cause issues from the appeal.  Issues omitted were critical and substantial and raised claims of a violation of constitutional rights, as well as, [sic] an abuse of discretion by the trial court.

          Issues submitted and omitted include a properly preserved claim of "Jury Misconduct" from a post-trial motion filed by the appellant as a "pro se" defendant.

          Further, there is also the issue of "new evidence" which was acquired and provided to appellate counsel.  This new "new evidence" [sic] supported evidence required as clear convincing to satisfy the required degree of proof of abuse of discretion by the trial court and to demonstrate that "juror misconduct" as well as "jury tampering" affected the outcome and the verdict, pursuant to Crim. R. 33A(2).

          While incarcerated the appellant sought and obtained corroborating evidence to show that allegations of "jury misconduct" and abuse of discretion were plausible and sufficient to warrant further inquiry by and through appellate counsel.

          The appellant, by and through this evidence has established independent evidence which consisted of information from a source other than other jurors themselves.

          The information was provided from a source that possessed first-hand knowledge of the jury, misconduct and abuse of discretion.

          Appellate counsel failed to raise valuable legal issues such as failure to recuse or disqualify, failure to properly serve, failure to properly handle return on a subpoena. [sic] His decision not to raise these issues was unprofessionally unreasonable and not advantageous to the appellant's defense, as such, he caused the appellant to lose her appeal.

          Wherefore, appellant was denied fair process and the opportunity to comply with the state procedure and obtain adjudication on the merits of her claim and respectfully requests that a new appeal be granted, or in the alternative a new trial, and that the effective assistance of counsel be provided at state expense.

ECF Dkt. # 31-1 at 314-15 (internal citations omitted).

The only issue Petitioner raised before the highest court in Ohio is her claim regarding ineffective assistance of appellate counsel.  Accordingly, even if the Court determines that grounds for relief other than ineffective assistance of appellate counsel existed in Petitioner's habeas petition and/or amended habeas petition, and determines that those grounds for relief survive Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases, Petitioner has failed to exhaust those surviving grounds for relief.  In addition, as far as the grounds for relief that Petitioner appears to assert outside of the context of her ineffective assistance of appellate counsel claim for the first time in her traverse to Respondent's return of writ, the undersigned finds that those claims have not been exhausted since they were never raised before the Supreme Court of Ohio.

### ii.  **Ineffective Assistance of Appellate Counsel**

Based on Petitioner's habeas petition, it appears that Petitioner is challenging the effectiveness of her appellate counsel on the failure to address violations of Petitioner's rights to the following degree:

> Fifth Amendment Violation: Appellate counsel failed to challenge Petitioner's indictment in the trial court, appellate court, or the Supreme Court of Ohio.
>
> Sixth Amendment Violations: Appellate counsel failed to raise a speedy trial claim, a confrontation clause claim, a compulsory process claim, and a claim that Petitioner was denied assistance of trial counsel.
>
> Fourteenth Amendment Violations: Appellate counsel failed to assert that Petitioner's due process and equal protection rights were violated.

*See* ECF Dkt. #1-1 at 15.  Following Petitioner's list of alleged violations used by the undersigned to prepare the summary immediately above, Petitioner claims that "[Petitioner's] counsel's failure to challenge these critical issues and to choose strategies and tactics which would stray far from these unconstitutional actions by the [c]ourt was unreasonable." *Id.*  On these bases, the undersigned determined that the claims laid out above form the basis of

-22-

Petitioner's ineffective assistance of counsel claim.

Petitioner must present claims to the state courts under the same theory later presented in federal court for a claim to be ripe for habeas review. *Wong*, 142 F,3d at 322. Federal courts may review federal claims that were evaluated on the merits by a state court, and claims that were not so evaluated, either because those claims were never presented to the state courts or improperly presented to the state courts, are generally not cognizable on federal habeas review. *Bonnell*, 301 F.Supp.2d at 722. To determine whether Petitioner presented her claims to the Supreme Court of Ohio under the same theory now presented in federal court, the Court must look to the claims as presented in Petitioner's appeal to the Supreme Court of Ohio and the claims as presented in Petitioner's habeas petition and amended petition.

Petitioner did not raise challenges to her indictment before the Supreme Court of Ohio. ECF Dkt. #31-1 at 314-15. Likewise, Petitioner did not allege that she was denied a speedy trial when claiming to the Supreme Court of Ohio that her appellate counsel was ineffective. *Id.* Petitioner did not claim that her appellate counsel was ineffective in failing to raise a confrontation clause claim when appealing to the Supreme Court of Ohio. *Id.* Petitioner made no mention in her appeal to the Supreme Court of Ohio that her appellate counsel was ineffective in failing to sufficiently present a claim that Petitioner was denied her right to trial counsel. *Id.* In fact, Petitioner's appellate counsel did raise a right to trial counsel claim on direct appeal, and the appellate court performed an analysis and determined that Petitioner was competent to waive representation by counsel. *Id.* at 287-92. Petitioner did not challenge the appellate court's determination that she was competent on appeal to the Supreme Court of Ohio. *Id.* at 314-15. Accordingly, Petitioner has failed to present the above portions of her ineffective assistance of appellate counsel claim to the Supreme Court of Ohio under the same theory now presented in federal court. For this reason, Petitioner has failed to exhaust the above discussed portions of her ineffective assistance of counsel claim. Petitioner makes no showing of cause to excuse her failure present these claims in state court and has not shown that she is actually innocent.

Petitioner's appeal to the Supreme Court of Ohio does allege that her due process rights were violated, and appears to also attempt to claim that her equal protection rights were violated in that she claims she was denied the opportunity to comply with state procedure and obtain adjudication on the merits of her case.  ECF Dkt. #31-1 at 315.  Respondent correctly asserts that "[g]eneral allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitution rights were violated."  ECF Dkt. #31 at 32 (quoting *McMeans*, 288 F.3d at 681).  Petitioner's allegations that her due process and equal protection rights were violated are general allegations of the type contemplated by *McMeans*.  Accordingly, Petitioner has failed to fairly present specific claims to the Supreme Court of Ohio regarding the alleged violation of Petitioner's Fourteenth Amendment rights, and has thus failed to exhaust her due process and equal protection claims.

In her appeal to the Supreme Court of Ohio, Petitioner does raise the issue of juror misconduct, and also alleges that she obtained new evidence of juror misconduct and that her appellate counsel failed to present this evidence.  ECF Dkt. #1-1 at 8.  Petitioner again asserted this issue in her habeas petition, and thus the issue of whether Petitioner's appellate counsel was ineffective for failing to present this new evidence of juror misconduct will be addressed on the merits.

### C.    Merits

Petitioner has successfully brought before the Court the issue of whether her appellate counsel was ineffective for failing to present new evidence of juror misconduct on appeal to the Sixth District Court of Appeals.  Petitioner's ineffective assistance of counsel claim fails because her appellate counsel sufficiently raised the claim in question on direct appeal.

In her March 11, 2013 motion for a mistrial, Petition first made allegations of juror misconduct regarding Juror #1.  ECF Dkt. #31-1 at 78.  It is in this motion for a mistrial that Petitioner alleges that Juror #1 failed to disclose that he was a member of the Toledo City Council and contradictorily testified that he lived in Oregon, Ohio.  *Id.* at 79-80.  Petitioner also alleged that Juror #1 failed to disclose a felony weapons conviction and a personal relationship

with the prosecutor's wife, who was the clerk of the Toledo Municipal Court. *Id.* at 80-81.

In response to Petitioner's motion for a mistrial, the trial court held a hearing, during which Juror #1 testified as to Petitioner's allegations. ECF Dkt. #31-1 at 90. The trial court also noted that Petitioner's claims were rebutted by the record, which indicated that Juror #1 had given his place of residence as Toledo, Ohio, and had stated that he worked as both an electrical worker and a member of the Toledo City Counsel. *Id.* at 92-93. Juror #1 testified that he had disclosed he knew the prosecutor's wife, but did not have a business and/or personal relationship with the prosecutor or his wife. *Id.* at 93. Juror #1 also testified that he failed to disclose a misdemeanor charge for carrying a concealed weapon, but indicated that he had not deliberately failed to disclose the charge, but had instead forgotten the charge because it was so old. *Id.* at 94-95. When questioned about her claims that the prosecutor's wife, as the clerk of Toledo Municipal Court, had tampered with jury selection, Petitioner provided "conjecture and no substantial evidence." *Id.* at 94. The trial court noted all of the above when denying Petitioner's March 11, 2013 motion for a new trial.

After filing her notice of appeal in the Sixth District Court of Appeals, Petitioner's appellate counsel filed a brief on behalf of Petitioner. ECF Dkt. #31-1 at 127. In this brief, Petitioner's appellate counsel raised an assignment of error asserting that the trial court erred in failing to grant the March 11, 2013 motion for a new trial in which Petitioner alleged jury misconduct. *Id.* at 166-67. Petitioner's appellate counsel briefly restated Petitioner's arguments submitted in her motion for a new trial, indicated that the trial court summarily rejected her arguments, and contended that the trial court should have allowed Petitioner to further examine the issues rather than overruling the motion for a new trial and proceeding to sentencing. *Id.* at 167.

On direct appeal, the Sixth District Court of Appeals determined that the trial court's decision to deny Petitioner's March 11, 2013 motion for a new trial was well within the trial court's discretion. ECF Dkt. #31-1 at 300. In making the determination, the Sixth District Court of Appeals indicated that Juror #1's *voir dire* testimony did not support Petitioner's arguments

and that most of the factual assertions contained in Petitioner's motion for a new trial were verifiably untrue. *Id.* Accordingly, the Sixth District Court of Appeals overruled the assignment of error asserted by Petitioner's appellate counsel regarding the trial court's denial of Petitioner's March 11, 2013 motion for a new trial. *Id.*

Contrary to Petitioner's assertions, her appellate counsel did raise a claim of juror misconduct on direct appeal. ECF Dkt. #31-1 at 166-67. Petitioner's claim that her appellate counsel's pursuit of the juror misconduct claim was inadequate is not well taken. There was substantial evidence presented rebutting Petitioner's claims regarding the alleged misconduct of Juror #1, and Petitioner failed to present evidence corroborating her juror misconduct claim. Additionally, the Sixth District Court of Appeals determined that there was no merit to Petitioner's juror misconduct claim. Petitioner's appellate counsel was not ineffective because he chose not to continue pursuing a meritless claim. In fact, Petitioner's appellate counsel did raise an assignment of error regarding juror misconduct. Petitioner has wholly failed to show how the Sixth District Court of Appeals' rejection of her juror misconduct claim was not objectively reasonable, or that this determination was contrary to or an unreasonable application of clearly established Supreme Court precedent pertaining to juror misconduct.

Based on the above analysis, the undersigned recommends that the Court determine that Petitioner's ineffective assistance of appellate counsel claim, as properly brought before the Court, fails on the merits.

## VII. CONCLUSION

Petitioner has failed to satisfy Rule 2(c) of the Rules Governing Section 2254 and 2255 Cases regarding all grounds for relief alleged in her habeas petition and amended habeas petition other than her ineffective assistance of appellate counsel claim. Additionally, petitioner has failed to exhaust all grounds for relief raised in her habeas petition and amended habeas petition other than her ineffective assistance of appellate counsel claim, and Petitioner has failed to exhaust much of her ineffective assistance of counsel claim because she presents the claim to the Court on a theory not fairly presented

-26-

to the Supreme Court of Ohio.  The issues raised in Petitioner's ineffective assistance of appellate counsel claim that have been properly exhausted are without merit because petitioner's appellate counsel was not ineffective when representing Petitioner.

For the above reasons, the undersigned RECOMMENDS that the Court dismiss Petitioner's petition for a writ of habeas corpus, as originally filed and amended (ECF Dkt. #1, #14) in its entirety with prejudice.


DATE:   December 23, 2015             _/s/ George J. Limbert_____
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).